# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                       Case No. 18-CR-192

RAMON PRADO,

          Defendant.

## ORDER FINDING DEFENDANT COMPETENT TO PROCEED

**1. Background**

Ramon Prado is charged with assaulting a Deputy United States Marshal. (ECF No. 5.) According to a criminal complaint (ECF No. 1), Prado went to the offices of the United States Marshal Service and asked to speak to someone. Two deputy marshals met Prado in the lobby and engaged in a conversation. At the end of the conversation Prado asked, "Which one of you gets to be punched first[?]" (ECF No. 1 at 2.) A deputy told him he could not assault anyone and that, if he did, he would be arrested. Prado stated that he was looking to be arrested, and he punched the deputy in the jaw. The incident was video recorded.

When Prado appeared before this court later that day, the government questioned whether he was competent. (ECF No. 2.) The court found "reasonable cause to believe that Prado may be suffering from a mental disease or defect that renders him mentally incompetent to the extent that he is unable to understand the nature and consequences of these proceedings or to assist properly in his defense." (ECF No. 3 at 1-2.) Therefore, the court ordered Prado to undergo a competency evaluation.

Prado was evaluated over the course of 45 days at the Metropolitan Correctional Center in Chicago. Dr. Robin Watkins, a board certified forensic psychologist, concluded that Prado was not competent but that he could be restored to competency. (ECF No. 9.) Although the United States accepted Dr. Watkins's conclusions, Prado challenged Dr. Watkins's report, alleging that he was competent. A hearing was held at which both Dr. Watkins and Prado testified.

It is obvious that Prado suffers from significant mental illness. However, as Dr. Watkins acknowledged, the nature of Prado's illness is unusual and complex. During his evaluations with Dr. Watkins Prado frequently made incredible assertions. For example, he reported that he has "credentials with the CIA," that he was an Interpol agent when he was in the military,[1] that he spoke to the United Nations on behalf of the Marine Corps, and that he was good friends with Justice Sotomayor, who had

---

[1] There is no evidence that Prado was ever in the military.

2

appointed him as a judge. What Dr. Watkins found unusual was not that Prado had incredible beliefs but that these beliefs were often consistent over time.

Dr. Watkins reported that Prado had "magical thinking." For example, he described a woman who "knew a very special Indian spell that allows her amino acids to shift from one species to another" and "playfully made herself appear to be some sort of viper." (ECF No. 9 at 14.) He described an incident in 2009 where he was shot in the head[2], placed in a coffin, and taken to a cemetery for a funeral, but his friends dug him out and gave him protein shakes with olive oil which revived him. (ECF No. 9 at 15-16.)

Prado also answered questions in an unusual manner, which, although not technically incorrect, were outside the range of expected responses. For example, when asked how blue and green are alike, a person would ordinarily respond that they are both colors. Prado answered that they are both colors on flags of North America. When asked how a square and a triangle are alike, rather than identifying them as both shapes, Prado answered that a triangle is half a square.

In his discussions with Dr. Watkins and during his testimony at the competency hearing, Prado was able to describe the offense with which he was charged, understood different penalties he faced and the nature of those penalties, and the different sorts of

---

[2] Prado recurrently reported various sorts of head trauma, but there was no specific evidence to support any of his claims.

pleas he could enter. He articulated an accurate understanding of the roles of the prosecutor, the judge, and his attorney.

> Of particular significance to Dr. Watkins were concerns that
>
> his description of his likely defense strategy was bizarre and did not appear to be reality-based. Specifically, he stated, "There's another jury state above [the Court] - called Interpol – I'd rather deal with Interpol than the Eastern District of Wisconsin." He asserted the Court does not have authority over him because he does not believe in a "higher power" and has not given the Court authority of him. He stated, "I feel a lot more superior to them, instead of them being superior to me."

(ECF No. 9 at 23.) Dr. Watkins also expressed concern that Prado may distrust his attorney. However, at the competency hearing Prado did not relate any such bizarre thinking as to defense strategy and instead expressed a desire to plead guilty. Moreover, Prado's attorney stated his belief that Prado is competent. Counsel reported being able to communicate with him effectively and that Prado was able to adequately assist in his own defense.

2. **Analysis**

A court may not, consistent with due process, accept a guilty plea from, try, or sentence a person who is mentally incompetent. *Anderson v. United States*, 865 F.3d 914, 919 (7th Cir. 2017) (citing *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975)); *United States v. Collins*, 949 F.2d 921, 924, 927 (7th Cir. 1991); *see also Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). "The test for competency to proceed to trial is fairly simple: Does the defendant have a sufficient

4

present ability to consult with his lawyer with a reasonable degree of rational understanding, and does he have a rational as well as a factual understanding of the proceedings against him." *United States v. Jones*, 83 F.3d 927, 928 (7th Cir. 1996); *see also* 18 U.S.C. § 4241(d) (stating a defendant is incompetent if "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense").

But "[t]he Constitution does not necessarily forbid trial of the mentally ill." *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996). After all, "[p]ersons in the criminal justice system often have diagnosed mental illnesses." *Anderson v. United States*, 865 F.3d 914, 920 (7th Cir. 2017). Thus, "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather the evidence must indicate a present inability to assist counsel or understand the charges." *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996) (quoting *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984)); *Price v. Thurmer*, 637 F.3d 831, 833-34 (7th Cir. 2011) ("The fact that a person suffers from a mental illness does not mean that he's incompetent to stand trial. He need only be able to follow the proceedings and provide the information that his lawyer needs in order to conduct an adequate defense, and to participate in certain critical decisions, such as whether to appeal.").

This is not a complex case. The offense relates to a few seconds of recent conduct, the entirety of which was video recorded. Prado's ability to assist in his own defense by accurately recalling events is not as material here as it might be if he had been charged in a lengthy drug conspiracy.

The court also affords significant weight to the representations of Prado's attorney that Prado is able to assist in his own defense. "[C]ounsel, 'more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings[.]" *United States v. Collins*, 949 F.2d 921, 927 (7th Cir. 1991) (quoting *Balfour v. Haws*, 892 F.2d 556, 561 (7th Cir. 1989)).

As Dr. Watkins acknowledged, this is a close case. It is obvious that Prado is significantly affected by mental illness and that it impacts his perception of reality. However, as to the two relevant domains—understanding the charges and assisting his attorney—Prado exhibits a coherent and appropriate understanding and an adequate ability. Therefore, the court finds that Prado is presently competent.

Granted, there is the possibility that Prado's mental illness will impact his understanding of his case. For example, if Prado were to develop the belief that he would not be punished because the CIA or Justice Sotomayor would intervene, he likely would not be competent. But such concerns can be mitigated by the diligence and attentiveness of Prado's counsel, the prosecutor, and the court. After all, competency

must be assessed and reassessed throughout a case. A finding of competency now does not preclude a subsequent finding of incompetence.

Finally, there is a question as to whether this court's conclusion may be set forth in an order or whether the court may merely recommend that Judge Adelman find Prado competent. The court is unaware of the Court of Appeals for the Seventh Circuit having addressed this question, although the court has occasionally noted, without comment, that a magistrate judge found a defendant competent. *United States v. Cobb*, 1997 U.S. App. LEXIS 36058 *2 (7th Cir. December 19, 1997); *United States v. Nance*, No. 96-2277, 1997 U.S. App. LEXIS 15533, at *7 (7th Cir. June 24, 1997); *United States v. Jones*, 87 F.3d 954, 955 (7th Cir. 1996). Magistrate judges within the circuit have been inconsistent, generally without discussing the distinction between an order and a recommendation. *See, e.g.*, *United States v. Patterson*, 2013 U.S. Dist. LEXIS 179698 *5 (S.D. Ind. December 23, 2013) (order); *United States v. Armann*, 2011 U.S. Dist. LEXIS 41836 *4-5 (E.D. Wis. April 18, 2011) (order); *United States v. Sabo*, 2010 U.S. Dist. LEXIS 119040 *4 (N.D. Ind. October 18, 2010) (recommendation); *United States v. Williams*, 2006 U.S. Dist. LEXIS 67421 (C.D. Ill. September 20, 2006) (recommendation); *United States v. Syed*, 1992 U.S. Dist. LEXIS 11100 *24 (N.D. Ill. July 22, 1992) (recommendation).

Perhaps the most detailed analysis of this issue was in *United States v. Kasim*, 2010 U.S. Dist. LEXIS 4953 *11 (N.D. Ind. January 21, 2010), where the court noted that competency motions were designated as non-dispositive matters in the court's

"Dispositive Logic Table," a chart that outlines how motions are directed on the court's Case Management and Electronic Case Filing (CM/ECF) system, *see* https://www.innd.uscourts.gov/sites/innd/files/DispositiveLogic.pdf. *United States v. Kasim*, 2010 U.S. Dist. LEXIS 4953 *11-12 (N.D. Ind. January 21, 2010). On this basis, the magistrate judge concluded that he was able to determine the defendant's competency.

The court's analysis starts with 28 U.S.C. § 636(b)(1), which states:

> [n]otwithstanding any provision of law to the contrary … a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

A determination of a defendant's competency is not one of the categories of excepted matters. Rather, it can be fairly seen as coming within the broad scope of "any pretrial matter" which magistrate judges are explicitly authorized to hear and determine. *See also* Gen. L.R. 72(a). Thus, a magistrate judge may enter an order finding a defendant competent unless any other provision of law is to the contrary.

The competency statute certainly is not to the contrary. It refers merely to "the court," 18 U.S.C. § 4241, a term that encompasses both magistrate judges and district judges. But beyond rules and statutes, a magistrate judge's authority is limited by Article III. *See United States v. Harden*, 758 F.3d 886, 891-92 (7th Cir. 2014).

The court finds that Article III does not preclude a magistrate judge from determining a defendant's competency. The court acknowledges that a finding of competence or incompetence affects a defendant's substantial rights. If incompetent, the defendant is remanded into the custody of the Attorney General. But such pre-conviction restraints of liberty in the form of bond and detention decisions are the routine domain of magistrate judges. *See* 18 U.S.C. § 3142.

However, competency is fundamental to due process. A defendant's right to testify on his behalf or to remain silent, the right to trial or to plead guilty, the right to confront his accusers, or even his right to counsel, are all of little meaning if he is not competent to exercise them. In this regard, the finding of competency might be compared to the conclusion that a defendant's decision to give up his right to trial and plead guilty was knowing and voluntary, which, as regards a felony, a magistrate judge may only recommend a district judge accept. *United States v. Harden*, 758 F.3d 886, 891-92 (7th Cir. 2014). Nor may a magistrate judge preside over the selection of a jury in a felony prosecution, *Gomez v. United States*, 490 U.S. 858, 876 (1989), absent the parties' consent, *Peretz v. United States*, 501 U.S. 923, 936 (1991).

But magistrate judges are not categorically prohibited from deciding issues that affect certain of the defendant's fundamental rights. For example, a magistrate judge may decide whether a defendant may waive conflict-free representation, *United States v. Freixas*, 332 F.3d 1314, 1319 (11th Cir. 2003), or waive counsel and represent himself at

trial, *United States v. Schultz*, 565 F.3d 1353, 1357 (11th Cir. 2009); *see also United States v. Brown*, 79 F.3d 1499, 1503 (7th Cir. 1996) ("Title 28 U.S.C. § 636(b)(1)(A) permits district judges to designate non-Article III magistrate judges for the determination of nondispositive pretrial motions, such as motions for substitute counsel.").

The court finds that a competency determination is more akin to matters relating to counsel as opposed to the acceptance of a guilty plea. Like conclusions regarding the waiver of counsel, a defendant's competency determination is readily reviewable. In fact, setting aside the fact that even a magistrate judge's orders are always subject to review by a district judge, albeit under the "clearly erroneous or contrary to law" standard as opposed to de novo for recommendations, 28 U.S.C. § 636(b), a court has an ongoing duty to assess a defendant's competency under 18 U.S.C. § 4241(a). Thus, as a practical matter, a magistrate judge's competency finding does not curtail a district judge from subsequently reaching a different conclusion. If the district judge disagrees with the magistrate judge's conclusion, short of finding that the magistrate judge's decision was contrary to law the district judge may simply independently reassess the defendant's competency consistent with 18 U.S.C. § 4241(a).

**IT IS THEREFORE ORDERED** that the court finds by a preponderance of the evidence that the defendant is not presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the

nature and consequences of the proceedings against him or to assist properly in his defense. Accordingly, the Clerk shall promptly schedule the defendant's arraignment.

Dated at Milwaukee, Wisconsin this 22nd day of March, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge